UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| VELOCITY COMMUNICATION TECHNOLOGIES, LLC,<br><br>   *Plaintiff,*<br><br>v.<br><br>D-LINK CORPORATION,<br><br>   *Defendant.* | Civil Action No._____<br><br>JURY TRIAL DEMANDED |

<u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Velocity Communication Technologies, LLC ("Velocity" or "Plaintiff") brings this action and makes the following allegations of patent infringement relating to U.S. Patent Nos.: 8,675,570 (the "'570 patent"); 8,260,213 (the "'213 patent"); 8,238,832 (the "'832 patent"); 8,270,343 (the "'343 patent"); 8,213,870 (the "'870 patent"); 8,644,765 (the "'765 patent"); 9,083,401 (the "'401 patent"); 10,200,096 (the "'096 patent"); 8,238,859 (the "'859 patent"); 8,265,573 (the "'573 patent"); and 9,596,648 (the "'648 patent") (collectively, the "patents-in-suit"). Defendant D-Link Corporation ("D-Link" or "Defendant") infringes the patents-in-suit in violation of the patent laws of the United States of America, 35 U.S.C. § 1 *et seq.*

<u>PLAINTIFF</u>

1. Plaintiff Velocity Communication Technologies, LLC ("Plaintiff" or "Velocity") is a Delaware limited liability company that holds a pool of over 220 patent assets across 46 distinct patent families developed by leading pioneers from across the globe in the field of wireless communications, including Marvell Technology, Inc.; NXP Semiconductors N.V.; Freescale Semiconductor, Inc.; Blackberry Ltd.; and ZTE Corporation.

2.     Plaintiff's patent pool includes a significant number of wireless networking patents essential to, and necessarily infringed by, the manufacture, sale, and operation of devices in compliance with the Institute of Electrical and Electronics Engineers (IEEE) 802.11ax standard, also referred to as the Wi-Fi 6 standard ("802.11ax Standard").  Plaintiff's patent portfolio not only includes each of the at-issue United States patents, but also an extensive number of additional U.S. patents not at issue in this case as well as numerous patents issued by the European Patent Office and the China National Intellectual Property Administration, among other foreign patent-issuing government bodies.

3.     Each of the patents-in-suit is necessarily practiced when devices operate in compliance with the 802.11ax Standard.

<u>**DEFENDANT**</u>

4.     Defendant D-Link Corporation ("D-Link") is a Taiwanese corporation with its principal place of business at No. 289, Xinhu 3rd Road, Neihu District, Taipei, 11494 Taiwan.

5.     D-Link is engaged in research and development, manufacturing, importation, distribution, sales, and related technical services for wireless devices, including particularly devices designed to operate on Wi-Fi 6 networks consistent with the 802.11ax Standard.  D-Link's Wi-Fi 6 products are made outside the United States and are then imported into the United States, distributed via an established distribution channel, and sold to end-users via the Internet and via distribution partners, retailers, and reseller partners.  Those sales occur in the United States and throughout Texas, including in this judicial District.

6.     D-Link affirmatively touts Wi-Fi 6 technology and its advantages to its prospective customers who purchase Wi-Fi 6 products.  For example, D-Link markets its Wi-Fi 6 products to U.S. customers as "The Future of Wi-Fi."



*WiFi 6 HQ*, D-LINK WEBSITE, *available at*: https://www.dlink.com/en/for-home/wifi-6-hq (last accessed May 2025).

7.    In describing Wi-Fi 6, D-Link's marketing claims: "The future is unstoppable. Your Wi-Fi should be too." *WiFi 6 HQ*, D-LINK WEBSITE, *available at*: https://www.dlink.com/en/for-home/wifi-6-hq (last accessed May 19, 2025).   D-Link touts a number of the benefits of Wi-Fi 6 to its customers: "Exceptional Capacity: Up to 4x more capacity compared to Wi-Fi 5;" "Backwards Compatible: Supports all exiting [*sic*] Wi-Fi devices;" "Made for Smart Homes: Better performance in device-dense environment[s];" "Next Gen Speed & Range: 25% increase in data rate compared to Wi-Fi 5;" and "Unprecedented Efficiency: Higher throughput, more efficient." *Id.*

## JURISDICTION AND VENUE

8.    This action arises under the patent laws of the United States, Title 35 of the United States Code.   Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

9.    This Court has personal jurisdiction over D-Link.  D-Link conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this judicial District, the State of Texas, and elsewhere in the United States.  D-Link has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  D-Link regularly sells (either directly or indirectly) its products within this judicial District.  For example, D-Link has placed and continues to place infringing products into the stream of commerce via an established distribution channel, such as its partner distributors, with the knowledge or understanding that such D-Link are being and will continue to be sold in this judicial District and within the State of Texas.  D-Link is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and the Texas Long Arm Statute, due at least to its substantial and pervasive business in this State and this judicial District, including at least part of its infringing activities alleged herein and deriving substantial revenue from goods sold to Texas residents.

10.    D-Link is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and the Texas Long Arm Statute based on its substantial business activities in the State of Texas and in this judicial District.

11.    D-Link's infringing activities constitute a portion of D-Link's substantial business activities in the State of Texas and in this judicial District.  As alleged herein, Defendant purposefully avails itself of the privilege of conducting its business activities in the State of Texas and in this judicial District, and, thus, submits itself to the jurisdiction of this Court.

12.    D-Link also regularly does and solicits business, engaging in other persistent conduct targeting residents of Texas and residents of this judicial District, and/or derives substantial revenue from infringing goods offered for sale, sold, and imported to and targeting

Texas residents and residents of this judicial District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.  *See, e.g.*, https://www.dlink.com/en/for-home/where-to-buy (website with D-Link Corporation copyright notice advertising country-specific hyperlinks of websites to buy D-Link products, including the Accused Products) (last accessed May 19, 2025); *see also* https://www.dlink.com/us/en (another English-language website with a D-Link Corporation copyright notice where the "United States (English)" hyperlink on the previous page directs customers and users of the www.dlink.com website).   Such a presence furthers the development, design, manufacture, importation, distribution, sale, and use (including by induced infringement) of infringing Accused Products in Texas, including this judicial District.  For example, D-Link is the applicant for FCC registrations for the sale and use of Accused Products.

13.     D-Link Corporation submits documentation to the U.S. FCC in support of necessary permissions to market the accused products in the United States.  D-Link's own submissions to the FCC reflect that D-Link Corporation is both the Applicant and the Manufacturer of the accused products, including, for example, the AX1800 Mesh Wi-Fi 6 Router and AX1500 Mesh Wi-Fi 6 Router.

## FCC Radio Test Report

### FCC ID:KA2IRX1860B1

**This report concerns: Original Grant**

| | | |
|---|---|---|
| Project No. | : | 2104H029 |
| Equipment | : | 1) AX1800 Mesh Wi-Fi 6 Router |
| | | 2) AX1500 Mesh Wi-Fi 6 Router |
| Brand Name | : | D-Link |
| Test Model | : | DIR-X1860 |
| Series Model | : | DIR-X1550 |
| Applicant | : | D-Link Corporation |
| Address | : | 14420 Myford Road Suite 100    Irvine California United States |
| Manufacturer | : | D-Link Corporation |
| Address | : | 14420 Myford Road Suite 100    Irvine California United States |
| Date of Receipt | : | Apr. 12, 2021 |
| Date of Test | : | Apr. 12, 2021~May. 26, 2021 |
| Issued Date | : | Jun. 17, 2021 |
| Report Version | : | R00 |
| Test Sample | : | Engineering Sample No.: SH20210412101-18 fro radiated; SH20210412101-19 for conducted; SH20210412101-5 adapter. |
| Standard(s) | : | FCC CFR Title 47, Part 15, Subpart C |
| | | FCC KDB 558074 D01 15.247 Meas Guidance v05r02 |
| | | FCC KDB 662911 D01 Multiple Transmitter Output v02r01 |
| | | ANSI C63.10-2013 |

FCC RADIO TEST REPORT NO. BTL-FCCP-1-2104H029, FCC ID: KA2IRX1860B1, *available at*: https://fccid.io/KA2IRX1860B1/Test-Report/Test-Report-2-4G-pt-1-5299144.pdf (last accessed May 19, 2025).

14.     It is D-Link Corporation, as opposed to any subsidiary of D-Link Corporation, that is responsible for the manufacture of the products accused of infringement in this action.  D-Link designs, develops, manufactures, and tests the accused products; D-Link then uses its own subsidiaries to ship them to the United States and sell the products through nationwide retailers; D-Link is the entity responsible for obtaining authorizations from the United States Federal Communications Commission ("FCC") needed to sell the accused products in the United States; D-Link avails itself of United States copyright productions for the accused products' packaging and user manuals.  And D-Link publicly promotes to investors its United States sales of the accused products.

15.     This Court has personal jurisdiction over D-Link, directly and/or through the activities of D-Link intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers.  Through direction and control of these various entities, D-Link has committed acts of direct and/or indirect patent infringement within the State of Texas, within this judicial District, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with the State of Texas such that personal jurisdiction over D-Link would not offend traditional notions of fair play and substantial justice.

16.     D-Link, directly via its agents and distribution partners, retailers, reseller partners, and other service providers in the United States, has placed and continues to place infringing Accused Products into the U.S. stream of commerce.  D-Link has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial District and the State of Texas.

17.     D-Link utilizes established distribution channels to distribute, market, offer for sale, sell, and service infringing products directly to consumers and other users in the United States, including providing links via its website to online stores, retailers, resellers, and distributors offering such products and related services for sale.  *See, e.g.*, https://www.dlink.com/en/for-home/where-to-buy (website with D-Link Corporation copyright notice advertising country-specific hyperlinks of websites to buy D-Link products, including the Accused Products) (last accessed May 19, 2025); *see also* https://www.dlink.com/us/en (another English-language website with a D-Link Corporation copyright notice where the "United States (English)" hyperlink on the previous page directs customers and users of the www.dlink.com website).  D-Link Corporation

websites also identify multiple "Partners" of D-Link where customers and end users of D-Link's products, including the accused products, can purchase those products within this judicial District.



*Where to Buy*, D-LINK WEBSITE, *available at*: https://www.dlink.com/us/en/for-business/where-to-buy (identifying "Partners" located in Plano, Texas; Carrollton, Texas; and Richardson, Texas on a website with an English-language website with a D-Link Corporation copyright notice).

18.    D-Link's accused products have been sold in both retail stores (online and brick and mortar) within this judicial District and within the State of Texas.

19.    Based on D-Link's connections and relationships with these retailers and digital distribution platforms, D-Link knows that Texas is a termination point of its established distribution channels, including the online as well as physical stores offering D-Link products to users in Texas.  D-Link, therefore, has purposefully directed its activities at the State of Texas, and should reasonably anticipate being brought before this Court.

20.    Based on D-Link's connections and relationships, including supply contracts and other agreements with the United States- and Texas-based distributors and suppliers, D-Link knows and has known that the State of Texas is a termination point of the established distribution channels for infringing D-Link accused products.  D-Link has purposefully directed its activities at the State of Texas, and should reasonably anticipate being brought into this Court, at least on this basis.

21.    In the alternative, this Court has personal jurisdiction over D-Link under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal patent law, D-Link is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over D-Link is consistent with the United States Constitution.

22.    Because this Court has personal jurisdiction over D-Link —a foreign corporation— venue is proper pursuant to 28 U.S.C. § 1391(c)(3) and 28 U.S.C. § 1400(b).

### THE 802.11AX (WI-FI 6) STANDARD

23.    Wireless Local Area Networks (WLANs) have become a foundational technology in modern digital communications.  This is largely driven by the increasing ubiquity of mobile computing devices, streaming services, and cloud-based applications.  WLANs operate over unlicensed spectrum bands, primarily in the 2.4 GHz and 5 GHz bands.  More recently, the 6 GHz band has been made available for Wi-Fi use in certain regions of the world.

24.    To ensure that users are able to communicate with one another despite the use of different networking equipment and end-user devices manufactured by different companies, it is important that WLAN operation is standardized.  This ensures interoperability, reliability, and global adoption of Wi-Fi technologies.  In the field of WLAN operation, standardization is organized through the Institute of Electrical and Electronics Engineers (IEEE), and more specifically under the 802.11 family of specifications, which is titled, "*Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications.*"

25.    The original IEEE 802.11 standard was published in 1997 and specified data rates of 1Mbps and 2Mbps using the 2.4 GHz band and three PHY layer technologies: infrared, frequency-hopping spread spectrum (FHSS), and direct-sequence spread spectrum (DSSS).

However, because of this relatively low data throughput, adoption was limited.  Over the years, the 802.11 standard has been amended and enhanced with the contribution of additional technologies by leading companies that operate in the WLAN field.

26.    In 1999, 802.11b and 802.11a were published that increased maximum throughput to 11Mbps in the 2.4 GHz band and 54 Mbps in the 5 GHz band, respectively.  In 2003, 802.11g was published that combined the higher (54 Mbps) throughput rate of 802.11a with the backward compatibility in the 2.4 GHz band.  This led to widespread adoption of Wi-Fi as a ubiquitous technology.

27.    In 2009, 802.11n was released with High Throughput (HT) enhancements.  802.11n introduced multiple-input, multiple-output (MIMO) antenna systems, channel bonding, frame aggregation, and several PHY/MAC enhancements to support data throughput rates up to 600 Mbps, introducing a significant leap in the technical capabilities of Wi-Fi systems.

28.    In 2013, IEEE introduced 802.11ac, which introduced Very High Throughput (VHT) features in the 5 GHz band.  This amendment to the 802.11 standard expanded MIMO capabilities to support up to 8 spatial streams and supported multi-user MIMO in the downlink.  These advancements improved network performance yet again in both home/personal as well as enterprise Wi-Fi networks.

29.    Despite these improvements over the years, challenges remained.  Due to the increasing prevalence of Wi-Fi-connected devices in daily life, legacy Wi-Fi technologies suffered from significant performance degradation as more devices competed for access to a given wireless network.

30.    To address the growing demands for higher capacity and more predictable performance in dense deployment scenarios, the IEEE formed Task Group AX in 2014.  The

group's mission was to develop a High Efficiency (HE) WLAN standard to improve throughput-per-area and reduce contention overhead.

31.     The standard resulting from this work is the 802.11ax Standard, which is commonly known as the Wi-Fi 6 standard.  The 802.11ax Standard represented a major architectural upgrade to Wi-Fi networks.  Key innovations in the 802.11ax Standard include Orthogonal Frequency Division Multiple Access (OFDMA) (allowing simultaneous transmissions to multiple users by subdividing channels); uplink and downlink multiple-user, multiple input, multiple output (MU-MIMO); Beamforming (a key innovation that improves signal strength and spatial efficiency by directing wireless transmissions toward specific devices rather than broadcasting in all directions); and improved MAC layer efficiency.  The first draft of the 802.11ax Standard was published in March 2016.  The Standard then underwent multiple revisions and industry trials before final approval by the IEEE on February 9, 2021 as IEEE Std 802.11ax-2021.

32.     Several leading wireless communication technology companies contributed technologies to the 802.11ax Standard.  Among the companies to substantially contribute to the 802.11ax Standard are: Marvell Technology, Inc.; NXP Semiconductors N.V.; and ZTE Corporation.  Velocity owns a portfolio of patents developed by these companies and reflecting their substantial contributions to the groundbreaking leap forward in WLAN technology reflected in the 802.11ax Standard now widely adopted by industry.

### D-LINK'S KNOWLEDGE OF THE PATENTS-IN-SUIT

33.     D-Link has known that NXP possessed patents relating to the 802.11ax Standard since at least September 29, 2020, which is when NXP submitted a Letter of Assurance for essential patent claims ("LOA") to the IEEE indicating that NXP owns patents that may be essential to the implementation of 802.11ax.  Further, D-Link has known that ZTE was the

developer of patented technology relating to the 802.11ax Standard at least since March 4, 2024, which is when ZTE submitted a LOA to the IEEE indicating that it owned patents that may be essential to the implementation of the 802.11ax Standard.

34.    D-Link has also known that Velocity was the owner of the patents-in-suit since at least April 15, 2025 when counsel for Velocity sent D-Link a letter, attached hereto as Exhibit 23. In that April 15 letter, Velocity explained that its patent portfolio covers technologies "incorporated into the IEEE 802.11ax (*i.e.*, Wi-Fi 6) standard, including: Uplink Multi-User Multiple-Input Multiple-Output (UL MU-MIMO); Basic Service Set (BSS) Coloring; Target Wake Time (TWT); Orthogonal Frequency Division Multiple Access (OFDMA); Longer OFDM Symbol Duration; Beamforming; and Transmit Power Control (TPC)."  Velocity further explained that its patents "also cover[] technologies included in the mandatory sections of the Wi-Fi 6E extension of the 802.11ax standard" and invited D-Link to license the patents-in-suit.  *Id.*

35.    In addition, and at minimum, D-Link was aware of and has been aware of the patents-in-suit as of the date of filing of this Complaint.

<u>**THE ASSERTED PATENTS**</u>

<u>**U.S. PATENT NO. 8,675,570**</u>

36.    U.S. Patent No. 8,675,570 (the "'570 patent") entitled, *Scalable OFDM and OFDMA Bandwidth Allocation in Communication Systems*, was filed on March 24, 2008.  The '570 patent claims priority to U.S. Provisional Patent Application No. 60/896,859, which was filed on March 23, 2007.  The '570 patent is subject to a 35 U.S.C. § 154(b) term extension of 1,031 days.  A true and correct copy of the '570 patent is attached hereto as Exhibit 1.

37.    The '570 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '570 patent.

38.     The '570 patent family has been cited by 90 United States and international patents and patent applications as relevant prior art.  The following companies and research institutions have cited the '570 patent as relevant prior art:

- Qualcomm Incorporated
- Samsung Electronics Co., Ltd.
- Intel IP Corporation
- Apple Inc.
- Microsoft Technology Licensing, LLC
- LG Electronics Inc.
- Nokia Solutions and Networks Oy
- NEC Corporation
- Telefonaktiebolaget LM Ericsson
- Motorola Mobility LLC
- Interdigital CE Patent Holdings
- NXP BV
- Wi-Lan, Inc.
- Huawei Technologies Co., Ltd.
- Mediatek Inc.
- Panasonic Holdings
- Sharp Kabushiki Kaisha
- Fujitsu Mobile Communications Limited
- Futurewei Technologies, Inc.
- Electronics and Telecommunications Research Institute

## U.S. PATENT NO. 8,260,213

39.     U.S. Patent No. 8,260,213 (the "'213 patent") entitled, *Method and Apparatus to Adjust a Tunable Reactive Element*, was filed on September 15, 2009.  The '213 patent claims priority to U.S. Provisional Patent Application No. 61/192,091, which was filed on September 15, 2008.  The '213 patent is subject to a 35 U.S.C. § 154(b) term extension of 414 days.  A true and correct copy of the '213 patent is attached hereto as Exhibit 2.

40.     The '213 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '213 patent.

41.    The '213 patent family has been cited by several United States and international patents and patent applications as relevant prior art.    Specifically, patents issued to STMicroelectronics NV, Raytheon Company, and BlackBerry Ltd. have cited the '213 patent family as relevant prior art.

**U.S. PATENT NO. 8,238,832**

42.    U.S. Patent No. 8,238,832 (the "'832 patent") entitled, *Antenna Optimum Beam Forming for Multiple Protocol Coexistence on a Wireless Device*, was filed on August 27, 2008. The '832 patent claims priority to Provisional Application No. 60/968,467, which was filed on August 28, 2007.  The '832 patent is subject to a 35 U.S.C. § 154(b) term extension of 661 days. A true and correct copy of the '832 patent is attached hereto as Exhibit 3.

43.    The '832 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '832 patent.

44.    The '832 patent family has been cited by 18 United States and international patents and patent applications as relevant prior art.    Specifically, patents issued to the following companies and research institutions have cited the '832 patent family as relevant prior art:

- Intel Corporation
- Sprint Communications L.P.
- Hewlett Packard Enterprise Development LP
- Kabushiki Kaisha Toshiba
- Panasonic Avionics Corporation
- Siemens Aktiengesellschaft
- Texas Instruments Incorporated
- Qualcomm Incorporated
- Apple Inc.

**U.S. PATENT NO. 8,270,343**

45.    U.S. Patent No. 8,270,343 (the "'343 patent") entitled, *Broadcasting of Textual and Multimedia Information*, was filed as U.S. Patent Application No. 11/722,295 on June 20, 2007.

The '343 patent claims priority as a national stage entry under 35 U.S.C. § 371 to International Patent Application No. PCT/EP04/14906, which was filed on December 20, 2004.  The '343 patent is subject to a 35 U.S.C. § 154(b) term extension of 1,486 days.  A true and correct copy of the '343 patent is attached hereto as Exhibit 4.

46.    The '343 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '343 patent.

47.    The '343 patent family has been cited by at least 27 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '343 patent family as relevant prior art:

- Telefonaktiebolaget LM Ericsson
- Samsung Electronics Co., Ltd.
- Huawei Technologies Co., Ltd.
- Cisco Technology, Inc.
- Qualcomm Incorporated

**U.S. PATENT NO. 8,213,870**

48.    U.S. Patent No. 8,213,870 (the "'870 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on October 15, 2008.  The '870 patent claims priority to U.S. Provisional patent Application No. 60/980,036, which was filed on October 15, 2007.  A true and correct copy of the '870 patent is attached hereto as Exhibit 5.

49.    The '870 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '870 patent.

50.    The '870 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '870 patent family as relevant prior art:

- Electronics and Telecommunications Research Institute
- NEC Laboratories America, Inc.

- Qualcomm Incorporated
- Samsung Electronics Co., Ltd.
- Intel Corporation
- Ruckus Wireless, Inc.
- Newracom, Inc.
- Telefonaktiebolaget LM Ericsson
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Amazon Technologies, Inc.

**U.S. PATENT NO. 8,644,765**

51.    U.S. Patent No. 8,644,765 (the "'765 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on June 29, 2012.  The '765 patent is a continuation of U.S. Patent Application No. 12/251,834, which was filed on October 15, 2008 and issued as U.S. Patent No. 8,213,870, and also claims priority to U.S. Provisional Application No. 60/980,036, which was filed October 15, 2007.  A true and correct copy of the '765 patent is attached hereto as Exhibit 6.

52.    The '765 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '765 patent.

53.    The '765 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '765 patent family as relevant prior art:

- Amazon Technologies, Inc.
- Samsung Electronics Co., Ltd.
- Qualcomm Incorporated
- Intel Corporation
- Arris Enterprises LLC
- Panasonic Avionics Corporation
- NEC Laboratories America, Inc.
- Electronics and Telecommunications Research Institute
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Newracom, Inc.

**U.S. PATENT NO. 9,083,401**

54.     U.S. Patent No. 9,083,401 (the "'401 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on February 3, 2014.  The '401 patent is a continuation of U.S. Patent Application No. 13/539,131, which was filed on June 29, 2012 and issued as U.S. Patent No. 8,644,765, which is a continuation of U.S. Patent Application No. 12/251,834, which was filed on October 15, 2008 and issued as U.S. Patent No. 8,213,870.  The '401 patent also claims priority to U.S. Provisional Application No. 60/980,036, which was filed on October 15, 2007.  A true and correct copy of the '401 patent is attached hereto as Exhibit 7.

55.     The '401 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '401 patent.

56.     The '401 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '401 patent family as relevant prior art:

- Amazon Technologies, Inc.
- Samsung Electronics Co., Ltd.
- Qualcomm Incorporated
- Intel Corporation
- Arris Enterprises LLC
- Panasonic Avionics Corporation
- NEC Laboratories America, Inc.
- Electronics and Telecommunications Research Institute
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Newracom, Inc.

**U.S. PATENT NO. 10,200,096**

57.     U.S. Patent No. 10,200,096 (the "'096 patent") entitled, *Beamforming Using Predefined Spatial Mapping Matrices*, was filed on March 13, 2017.  The '096 patent is a continuation of U.S. Patent Application No. 12/251,834, which was filed on October 15, 2008 and

issued as U.S. Patent No. 8,213,870, and also claims priority to U.S. Provisional Patent Application No. 60/980,036, which was filed on October 15, 2007.  The '096 patent is subject to a 35 U.S.C. § 154(b) term extension of 11 days.  A true and correct copy of the '096 patent is attached hereto as Exhibit 8.

58.    The '096 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '096 patent.

59.    The '096 patent family has been cited by 34 United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '096 patent family as relevant prior art:

- NEC Laboratories America, Inc.
- Electronics and Telecommunications Research Institute
- Qualcomm Incorporated
- Intel Corporation
- Ruckus Wireless, Inc.
- Newracom, Inc.
- Telefonaktiebolaget LM Ericsson
- Industrial Technology Research Institute
- AT&T Intellectual Property I, L.P.
- Amazon Technologies, Inc.

## U.S. PATENT NO. 8,238,859

60.    U.S. Patent No. 8,238,859 (the "'859 patent") entitled, *Radio Receiver*, was filed as U.S. Patent Application No. 12/281,987 on September 6, 2008.  The '859 patent claims priority as a national stage entry under 35 U.S.C. § 371 to International Patent Application No. PCT/EP07/50774, which was filed on March 8, 2007.  The '859 patent claims priority to European Patent Application No. EP06110905, filed on March 9, 2006.  The '859 patent is subject to a 35 U.S.C. § 154(b) term extension of 834 days.  A true and correct copy of the '859 patent is attached hereto as Exhibit 9.

61.    The '859 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '859 patent.

62.    The '859 patent family has been cited by several United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to Trend Micro Co., Ltd. and Microchip Technology Incorporated have cited the '859 patent family as relevant prior art.

**U.S. PATENT NO. 8,265,573**

63.    U.S. Patent No. 8,265,573 (the "'573 patent") entitled, *Wireless Subscriber Communication Unit and Method of Power Control with Back-Off Therefore*, was filed as U.S. Patent Application No. 12/096,550 on June 6, 2008.  The '573 patent claims priority as a national stage entry under 35 U.S.C. § 371 to International Patent Application No. PCT/EP05/56593, which was filed on December 7, 2005.  The '573 patent is subject to a 35 U.S.C. § 154(b) term extension of 1,117 days.  A true and correct copy of the '573 patent is attached hereto as Exhibit 10.

64.    The '573 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '573 patent.

65.    The '573 patent family has been cited by several United States and international patents and patent applications as relevant prior art.  Specifically, patents issued to the following companies and research institutions have cited the '573 patent family as relevant prior art:

- Panasonic Holdings Corporation
- ViaSat, Inc.
- Rockwell Collins, Inc.
- Chi Mei Communication Systems, Inc.
- Nordic Semiconductor ASA

**U.S. PATENT NO. 9,596,648**

66.    U.S. Patent No. 9,596,648 (the "'648 patent") entitled, *Unified Beacon Format*, was filed on June 28, 2013.  The '648 patent claims priority to U.S. Provisional Patent Application Nos. 61/666,156; 61/680,628; and 61/700,148, which were filed on June 29, 2012; August 7, 2012; and September 12, 2012, respectively.   A true and correct copy of the '648 patent is attached hereto as Exhibit 11.

67.    The '648 patent has been in full force and effect since its issuance.  Velocity owns by assignment the entire right, title, and interest in and to the '648 patent.

68.    The '648 patent family has been cited by 24 United States and international patents and patent applications as relevant prior art.   Specifically, patents issued to the following companies and research institutions have cited the '648 patent family as relevant prior art:

- Huawei Technologies Co., Ltd.
- Intel Corporation
- Qualcomm Incorporated
- Texas Instruments Incorporated
- Mediatek Inc.
- ZTE Corporation
- Singapore Agency for Science, Technology, and Research
- International Business Machines Corporation
- Ericsson Sweden Ltd.
- The Wireless Registry, Inc.
- Sling Media, LLC

**COUNT I**
**INFRINGEMENT OF U.S. PATENT NO. 8,675,570**

69.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

70.    D-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AX1800 Access Points; AX1800 Mesh Range Extenders; AX1800 Routers;

AX1500 Wi-Fi 6 Routers; AX3000 5G NR Cellular Gateway WiFi 6 Routers; AX3000 Outdoor Access Points; AX5400 WiFi 6E Tri-Band Mesh Routers; Aquila Pro AI AX3000 Smart WiFi 6 Routers; Aquila Pro AI AX3000 Wi-Fi 6 Smart Mesh Extenders; Aquila Pro AI AX6000 Dual-Bandi Wi-Fi 6 Router; Aquila Pro AI Series Mesh Routers and Extenders (including the E30; M30; and M60); DAP-E9560; DIR-X1860z Routers; DIR-X3000Z Mesh Wireless Gateways; DIR-X3060z Routers; DVA-6800Z Routers; EXO AX WiFi 6 AX1800 Mesh Extenders; Nuclias Cloud-Managed AX3600 Access Points; Nuclias Connect AX1800 Access Points; Nuclias Connect AX3000 Access Points; Nuclias Connect AX3600 Dual-Band PoE Access Points; Unified AX Dual-Band PoE Access Points; and 5G BE7200 Routers (collectively, the "'570 Accused Product(s)").

71.     D-Link designs, makes, uses, sells, and/or offers for sale the '570 Accused Products in the United States.

72.     One or more D-Link subsidiaries and/or affiliates use the '570 Accused Products in regular business operations.

73.     D-Link has directly infringed and continues to directly infringe the '570 patent by, among other things, making, using, offering for sale, and/or selling the '570 Accused Products. The functionality recited in the '570 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '570 Accused Products infringe at least claim 1 of the '570 patent can be found in the chart attached hereto as Exhibit 12.

74.     The '570 Accused Products are available to businesses and individuals throughout the United States.

75.     The '570 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

76.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '570 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '570 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 12 applies each limitation of claim 1 of the '570 patent to the '570 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '570 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '570 patent.  Exhibit 12 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 12 that is mapped to the '570 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

77.    D-Link also indirectly infringes the '570 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, D-Link advertises and encourages end users to utilize the '570 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

78.    D-Link has had knowledge of the '570 patent since at least shortly after March 4, 2024, when ZTE submitted a Letter of Assurance to IEEE notifying IEEE and industry participants that ZTE developed patented technologies incorporated into the 802.11ax Standard.  Alternatively, D-Link has had knowledge of the '570 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the

802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

79.     Alternatively, D-Link has had knowledge of the '570 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '570 patent and knew of its infringement, including by way of this lawsuit.

80.     D-Link intended to induce patent infringement by third-party customers and users of the '570 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  D-Link specifically intended and was aware that the normal and customary use of the accused products would infringe the '570 patent.  D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '570 patent and with the knowledge that the induced acts would constitute infringement.  For example, D-Link provides the '570 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '570 patent, including at least claim 1, and D-Link further advertises the '570 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '570 patent.  On information and belief, D-Link advertises all of the '570 Accused Products as complying with the 802.11ax Standard.[1]  By providing instruction and training to customers and end-users on how to use the '570 Accused Products in a manner that

_____

[1] *See, e.g.*, *D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Router (M60)*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/wifi-6/products/aquila-pro-ai-ax6000-dual-band-wi-fi-6-router-m60 (last accessed May 27, 2025); *D-Link AX3000 5G NR Cellular WiFi 6 Router*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/routers-mesh-systems/products/d-link-ax3000-5g-cellular-gateway-wi-fi-6-router-enhanced-security-g530 (last accessed May 27, 2025); *D-Link WiFi Router AX1800 WiFi 6*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/products/d-link-wifi-6-router-ax1800?srsltid=AfmBOoouth QPo9JECYrEBW3bT-0Z2rUCzPZmmvpnA1PLe4YC_m2_p6pL (last accessed May 27, 2025).

directly infringes one or more claims of the '570 patent, including at least claim 1, D-Link specifically intended to induce infringement of the '570 patent.  D-Link engaged in such inducement to promote the sales of the '570 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '570 patent.  Accordingly, D-Link has induced and continues to induce users of the '570 Accused Products to use the '570 Accused Products in their ordinary and customary way to infringe the '570 patent, knowing that such use constitutes infringement of the '570 patent.

81.    D-Link also indirectly infringes the '570 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '570 Accused Products and causing the '570 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '570 Accused Products, such that the '570 patent is directly infringed.  The accused components within the '570 Accused Products are material to the invention of the '570 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '570 patent.  D-Link has performed and continues to perform these affirmative acts with knowledge of the '570 patent and with intent, or willful blindness, that they cause the direct infringement of the '570 patent.

82.    As described above, D-Link knew that ZTE was the company responsible for developing technologies incorporated into the 802.11ax Standard and that ZTE patented those pioneering technologies since at least March 4, 2024, when ZTE submitted a Letter of Assurance

to IEEE.  The '570 patent is a patent originally assigned to ZTE that resulted from ZTE's development of OFDMA technology incorporated into the 802.11ax Standard.  D-Link has also known that Velocity was the owner by assignment of the '570 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

83.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, D-Link willfully blinded itself to its infringement of the patents-in-suit.  D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

84.    D-Link is utilizing the technology claimed in the '570 patent without paying a reasonable royalty.  D-Link is infringing the '570 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

85.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '570 patent.

86.    As a result of D-Link's infringement of the '570 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

## COUNT II
### INFRINGEMENT OF U.S. PATENT NO. 8,260,213

87.     Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

88.     D-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AX1800 Access Points; AX1800 Mesh Range Extenders; AX1800 Routers; AX1500 Wi-Fi 6 Routers; AX3000 5G NR Cellular Gateway WiFi 6 Routers; AX3000 Outdoor Access Points; AX5400 WiFi 6E Tri-Band Mesh Routers; Aquila Pro AI AX3000 Smart WiFi 6 Routers; Aquila Pro AI AX3000 Wi-Fi 6 Smart Mesh Extenders; Aquila Pro AI AX6000 Dual-Bandi Wi-Fi 6 Router; Aquila Pro AI Series Mesh Routers and Extenders (including the E30; M30; and M60); DAP-E9560; DIR-X1860z Routers; DIR-X3000Z Mesh Wireless Gateways; DIR-X3060z Routers; DVA-6800Z Routers; EXO AX WiFi 6 AX1800 Mesh Extenders; Nuclias Cloud-Managed AX3600 Access Points; Nuclias Connect AX1800 Access Points; Nuclias Connect AX3000 Access Points; Nuclias Connect AX3600 Dual-Band PoE Access Points; Unified AX Dual-Band PoE Access Points; and 5G BE7200 Routers (collectively, the "'213 Accused Product(s)").

89.     D-Link designs, makes, uses, sells, and/or offers for sale the '213 Accused Products in the United States.

90.     One or more D-Link subsidiaries and/or affiliates use the '213 Accused Products in regular business operations.

91.     D-Link has directly infringed and continues to directly infringe the '213 patent by, among other things, making, using, offering for sale, and/or selling the '213 Accused Products. The functionality recited in the '213 patent has been incorporated into the 802.11ax Standard.   A

detailed description as to why the '213 Accused Products infringe at least claim 1 of the '213 patent can be found in the chart attached hereto as Exhibit 13.

92.     The '213 Accused Products are available to businesses and individuals throughout the United States.

93.     The '213 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

94.     By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '213 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '213 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 13 applies each limitation of claim 1 of the '213 patent to the '213 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '213 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '213 patent.  Exhibit 13 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 13 that is mapped to the '213 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

95.     D-Link also indirectly infringes the '213 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, D-Link advertises and encourages end users to utilize the '213 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

96.      D-Link has had knowledge of the '213 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.   Alternatively, D-Link has had knowledge of the '213 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

97.      Alternatively, D-Link has had knowledge of the '213 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '213 patent and knew of its infringement, including by way of this lawsuit.

98.      D-Link intended to induce patent infringement by third-party customers and users of the '213 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  D-Link specifically intended and was aware that the normal and customary use of the accused products would infringe the '213 patent.  D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '213 patent and with the knowledge that the induced acts would constitute infringement.  For example, D-Link provides the '213 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '213 patent, including at least claim 1, and D-Link further advertises the '213 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '213 patent.  On information and belief, D-Link advertises all of the '213 Accused Products as complying with the 802.11ax Standard.[2]   By providing instruction and

---

[2] *See, e.g.*, *D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Router (M60)*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/wifi-6/products/aquila-pro-ai-ax6000-dual-band-wi-fi-6-router-m60 (last accessed May 27, 2025); *D-Link AX3000 5G NR Cellular WiFi 6 Router*, D-LINK SHOP WEBSITE, *available at*:

training to customers and end-users on how to use the '213 Accused Products in a manner that directly infringes one or more claims of the '213 patent, including at least claim 1, D-Link specifically intended to induce infringement of the '213 patent.  D-Link engaged in such inducement to promote the sales of the '213 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '213 patent.  Accordingly, D-Link has induced and continues to induce users of the '213 Accused Products to use the '213 Accused Products in their ordinary and customary way to infringe the '213 patent, knowing that such use constitutes infringement of the '213 patent.

99.    D-Link also indirectly infringes the '213 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '213 Accused Products and causing the '213 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '213 Accused Products, such that the '213 patent is directly infringed.  The accused components within the '213 Accused Products are material to the invention of the '213 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '213 patent.  D-Link has performed and continues to perform these affirmative acts with

---

https://shop.us.dlink.com/collections/routers-mesh-systems/products/d-link-ax3000-5g-cellular-gateway-wi-fi-6-router-enhanced-security-g530 (last accessed May 27, 2025); *D-Link WiFi Router AX1800 WiFi 6*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/products/d-link-wifi-6-router-ax1800?srsltid=AfmBOoouth QPo9JECYrEBW3bT-0Z2rUCzPZmmvpnA1PLe4YC_m2_p6pL (last accessed May 27, 2025).

knowledge of the '213 patent and with intent, or willful blindness, that they cause the direct infringement of the '213 patent.

100.    As described above, D-Link knew that NXP possessed patents, including the '213 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. D-Link has also known that Velocity was the owner by assignment of the '213 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

101.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, D-Link willfully blinded itself to its infringement of the patents-in-suit.  D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

102.    D-Link is utilizing the technology claimed in the '213 patent without paying a reasonable royalty.  D-Link is thus infringing the '213 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

103.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '213 patent.

104.    As a result of D-Link's infringement of the '213 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's

infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. 8,238,832**

105.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

106.    D-Link makes, sells, offers to sell, imports, and/or uses all Access Points[3] ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AX1800 Access Points; AX1800 Mesh Range Extenders; AX1800 Routers; AX1500 Wi-Fi 6 Routers; AX3000 5G NR Cellular Gateway WiFi 6 Routers; AX3000 Outdoor Access Points; AX5400 WiFi 6E Tri-Band Mesh Routers; Aquila Pro AI AX3000 Smart WiFi 6 Routers; Aquila Pro AI AX3000 Wi-Fi 6 Smart Mesh Extenders; Aquila Pro AI AX6000 Dual-Bandi Wi-Fi 6 Router; Aquila Pro AI Series Mesh Routers and Extenders (including the E30; M30; and M60); DAP-E9560; DIR-X1860z Routers; DIR-X3000Z Mesh Wireless Gateways; DIR-X3060z Routers; DVA-6800Z Routers; EXO AX WiFi 6 AX1800 Mesh Extenders; Nuclias Cloud-Managed AX3600 Access Points; Nuclias Connect AX1800 Access

---

[3] An IEEE 802.11ax Access Point (AP) (802.11ax § 3.2) is defined by the 802.11ax Standard as a High Efficiency (HE) station (STA) (§ 4.3.15a) that establishes and centrally coordinates Basic Service Set (BSS) infrastructure (§§ 3.2, 26.17.1). Mandatory Physical Layer (PHY) capabilities of an 802.11ax Access Point include Downlink/Uplink Orthogonal Frequency Division Multiple Access (OFDMA) and Downlink Multi-User Multiple Input, Multiple Output (DL MU-MIMO) for APs supporting 4 or more spatial streams over the entire PPDU bandwidth. Such APs shall also set the MU Beamformer subfield to 1 (§§ 4.3.15a, 27.1.1, 26.7.2). When operating in the 6 GHz band, APs shall support at least 80 MHz channel width, enable spectrum management (dot11SpectrumManagementRequired = true), and enable FILS Discovery frame omission (dot11FILSOmitReplicateProbeResponses = true) (§ 26.17.2.1). Mandatory Medium Access Control (MAC) capabilities of an 802.11ax Access Point include HE control field operations (dot11HEControlFieldOptionImplemented = true) (§ 10.8), OMI responder (dot11OMIOptionImplemented = true) (§§ 4.3.15a, 26.9.1), and individual TWT responder functionality (§§ 4.3.15a, 26.8.1).

Points; Nuclias Connect AX3000 Access Points; Nuclias Connect AX3600 Dual-Band PoE Access Points; Unified AX Dual-Band PoE Access Points; and 5G BE7200 Routers (collectively, the "'832 Accused Product(s)").

107.    D-Link designs, makes, uses, sells, and/or offers for sale the '832 Accused Products in the United States.

108.    One or more D-Link subsidiaries and/or affiliates use the '832 Accused Products in regular business operations.

109.    D-Link has directly infringed and continues to directly infringe the '832 patent by, among other things, making, using, offering for sale, and/or selling the '832 Accused Products. The functionality recited in the '832 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '832 Accused Products infringe at least claim 18 of the '832 patent can be found in the chart attached hereto as Exhibit 14.

110.    The '832 Accused Products are available to businesses and individuals throughout the United States.

111.    The '832 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

112.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '832 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '832 patent, including at least claim 18 pursuant to 35 U.S.C. § 271(a).  Exhibit 14 applies each limitation of claim 18 of the '832 patent to the '832 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '832 Accused Products obtained through discovery.  This chart is not intended to limit

Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '832 patent.  Exhibit 14 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 14 that is mapped to the '832 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

113.    D-Link also indirectly infringes the '832 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, D-Link advertises and encourages end users to utilize the '832 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

114.    D-Link has had knowledge of the '832 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, D-Link has had knowledge of the '832 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

115.    Alternatively, D-Link has had knowledge of the '832 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '832 patent and knew of its infringement, including by way of this lawsuit.

116.    D-Link intended to induce patent infringement by third-party customers and users of the '832 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  D-Link specifically intended and was aware that the normal and customary use of the accused products

would infringe the '832 patent.  D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '832 patent and with the knowledge that the induced acts would constitute infringement.  For example, D-Link provides the '832 Accused Products that have the capability of operating in a manner that infringes one or more of the claims of the '832 patent, including at least claim 18, and D-Link further advertises the '832 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '832 patent.  On information and belief, D-Link advertises all of the '832 Accused Products as complying with the 802.11ax Standard.[4]  By providing instruction and training to customers and end-users on how to use the '832 Accused Products in a manner that directly infringes one or more claims of the '832 patent, including at least claim 18, D-Link specifically intended to induce infringement of the '832 patent.  D-Link engaged in such inducement to promote the sales of the '832 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '832 Accused Products to infringe the '832 patent.  Accordingly, D-Link has induced and continues to induce users of the '832 Accused Products to use the '832 Accused Products in their ordinary and customary way to infringe the '832 patent, knowing that such use constitutes infringement of the '832 patent.

---

[4] *See, e.g.*, *D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Router (M60)*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/wifi-6/products/aquila-pro-ai-ax6000-dual-band-wi-fi-6-router-m60 (last accessed May 27, 2025); *D-Link AX3000 5G NR Cellular WiFi 6 Router*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/routers-mesh-systems/products/d-link-ax3000-5g-cellular-gateway-wi-fi-6-router-enhanced-security-g530 (last accessed May 27, 2025); *D-Link WiFi Router AX1800 WiFi 6*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/products/d-link-wifi-6-router-ax1800?srsltid=AfmBOoouth QPo9JECYrEBW3bT-0Z2rUCzPZmmvpnA1PLe4YC_m2_p6pL (last accessed May 27, 2025).

117.    D-Link also indirectly infringes the '832 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '832 Accused Products and causing the '832 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '832 Accused Products, such that the '832 patent is directly infringed.  The accused components within the '832 Accused Products are material to the invention of the '832 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '832 patent.   D-Link has performed and continues to perform these affirmative acts with knowledge of the '832 patent and with intent, or willful blindness, that they cause the direct infringement of the '832 patent.

118.    As described above, D-Link knew that NXP possessed patents, including the '832 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. D-Link has also known that Velocity was the owner by assignment of the '832 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

119.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, D-Link willfully blinded itself to its infringement of the patents-

in-suit.  D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

120.    D-Link is utilizing the technology claimed in the '832 patent without paying a reasonable royalty.  D-Link is thus infringing the '832 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

121.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '832 patent.

122.    As a result of D-Link's infringement of the '832 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

### COUNT IV
### INFRINGEMENT OF U.S. PATENT NO. 8,270,343

123.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

124.    D-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AX1800 Access Points; AX1800 Mesh Range Extenders; AX1800 Routers; AX1500 Wi-Fi 6 Routers; AX3000 5G NR Cellular Gateway WiFi 6 Routers; AX3000 Outdoor Access Points; AX5400 WiFi 6E Tri-Band Mesh Routers; Aquila Pro AI AX3000 Smart WiFi 6 Routers; Aquila Pro AI AX3000 Wi-Fi 6 Smart Mesh Extenders; Aquila Pro AI AX6000 Dual-Band¡ Wi-Fi 6 Router; Aquila Pro AI Series Mesh Routers and Extenders (including the E30; M30; and M60); DAP-E9560; DIR-X1860z Routers; DIR-X3000Z Mesh Wireless Gateways; DIR-

X3060z Routers; DVA-6800Z Routers; EXO AX WiFi 6 AX1800 Mesh Extenders; Nuclias Cloud-Managed AX3600 Access Points; Nuclias Connect AX1800 Access Points; Nuclias Connect AX3000 Access Points; Nuclias Connect AX3600 Dual-Band PoE Access Points; Unified AX Dual-Band PoE Access Points; and 5G BE7200 Routers (collectively, the "'343 Accused Product(s)").

125.    D-Link designs, makes, uses, sells, and/or offers for sale the '343 Accused Products in the United States.

126.    One or more D-Link subsidiaries and/or affiliates use the '343 Accused Products in regular business operations.

127.    D-Link has directly infringed and continues to directly infringe the '343 patent by, among other things, making, using, offering for sale, and/or selling the '343 Accused Products. The functionality recited in the '343 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '343 Accused Products infringe at least claim 10 of the '343 patent can be found in the chart attached hereto as Exhibit 15.

128.    The '343 Accused Products are available to businesses and individuals throughout the United States.

129.    The '343 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

130.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '343 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '343 patent, including at least claim 10 pursuant to 35 U.S.C. § 271(a).   Exhibit 15 applies each limitation of claim 10 of the '343 patent to the '343

Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '343 Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '343 patent.  Exhibit 15 is hereby incorporated by reference in its entirety. Each claim element in Exhibit 15 that is mapped to the '343 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

131.    D-Link also indirectly infringes the '343 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, D-Link advertises and encourages end users to utilize the '343 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

132.    D-Link has had knowledge of the '343 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, D-Link has had knowledge of the '343 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

133.    Alternatively, D-Link has had knowledge of the '343 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '343 patent and knew of its infringement, including by way of this lawsuit.

134.    D-Link intended to induce patent infringement by third-party customers and users of the '343 Accused Products and had knowledge that the inducing acts would cause infringement

or was willfully blind to the possibility that its inducing acts would cause infringement.  D-Link specifically intended and was aware that the normal and customary use of the '343 Accused Products would infringe the '343 patent.  D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '343 patent and with the knowledge that the induced acts would constitute infringement.  For example, D-Link provides the '343 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '343 patent, including at least claim 10, and D-Link further advertises the '343 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '343 patent.  On information and belief, D-Link advertises all of the '343 Accused Products as complying with the 802.11ax Standard.[5]  By providing instruction and training to customers and end-users on how to use the '343 Accused Products in a manner that directly infringes one or more claims of the '343 patent, including at least claim 10, D-Link specifically intended to induce infringement of the '343 patent.  D-Link engaged in such inducement to promote the sales of the '343 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '343 Accused Products to infringe the '343 patent.  Accordingly, D-Link has induced and continues to induce users of the '343 Accused Products to use the '343 Accused Products in their

---

[5] *See, e.g.*, *D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Router (M60)*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/wifi-6/products/aquila-pro-ai-ax6000-dual-band-wi-fi-6-router-m60 (last accessed May 27, 2025); *D-Link AX3000 5G NR Cellular WiFi 6 Router*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/routers-mesh-systems/products/d-link-ax3000-5g-cellular-gateway-wi-fi-6-router-enhanced-security-g530 (last accessed May 27, 2025); *D-Link WiFi Router AX1800 WiFi 6*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/products/d-link-wifi-6-router-ax1800?srsltid=AfmBOoouth QPo9JECYrEBW3bT-0Z2rUCzPZmmvpnA1PLe4YC_m2_p6pL (last accessed May 27, 2025).

ordinary and customary way to infringe the '343 patent, knowing that such use constitutes infringement of the '343 patent.

135.    D-Link also indirectly infringes the '343 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '343 Accused Products and causing the '343 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '343 Accused Products, such that the '343 patent is directly infringed.  The accused components within the '343 Accused Products are material to the invention of the '343 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '343 patent.   D-Link has performed and continues to perform these affirmative acts with knowledge of the '343 patent and with intent, or willful blindness, that they cause the direct infringement of the '343 patent.

136.    As described above, D-Link knew that NXP possessed patents, including the '343 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. D-Link has also known that Velocity was the owner by assignment of the '343 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

137.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid

and not infringed.  At minimum, D-Link willfully blinded itself to its infringement of the patents-in-suit.  D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

138.    D-Link is thus infringing the '343 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

139.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '343 patent.

140.    As a result of D-Link's infringement of the '343 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

## COUNT V
## INFRINGEMENT OF U.S. PATENT NO. 8,213,870

141.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

142.    D-Link makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AX1800 Access Points; AX1800 Mesh Range Extenders; AX1800 Routers; AX1500 Wi-Fi 6 Routers; AX3000 5G NR Cellular Gateway WiFi 6 Routers; AX3000 Outdoor Access Points; AX5400 WiFi 6E Tri-Band Mesh Routers; Aquila Pro AI AX3000 Smart WiFi 6 Routers; Aquila Pro AI AX3000 Wi-Fi 6 Smart Mesh Extenders; Aquila Pro AI AX6000 Dual-Bandi Wi-Fi 6 Router; Aquila Pro AI Series Mesh Routers and Extenders (including the E30; M30; and M60); DAP-E9560; DIR-X1860z Routers; DIR-X3000Z Mesh

Wireless Gateways; DIR-X3060z Routers; DVA-6800Z Routers; EXO AX WiFi 6 AX1800 Mesh Extenders; Nuclias Cloud-Managed AX3600 Access Points; Nuclias Connect AX1800 Access Points; Nuclias Connect AX3000 Access Points; Nuclias Connect AX3600 Dual-Band PoE Access Points; Unified AX Dual-Band PoE Access Points; and 5G BE7200 Routers (collectively, the "'870 Accused Product(s)").

143.    D-Link designs, makes, uses, sells, and/or offers for sale the '870 Accused Products in the United States.

144.    One or more D-Link subsidiaries and/or affiliates use the '870 Accused Products in regular business operations.

145.    D-Link has directly infringed and continues to directly infringe the '870 patent by, among other things, making, using, offering for sale, and/or selling the '870 Accused Products. The functionality recited in the '870 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '870 Accused Products infringe at least claim 1 of the '870 patent can be found in the chart attached hereto as Exhibit 16.

146.    The '870 Accused Products are available to businesses and individuals throughout the United States.

147.    The '870 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

148.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '870 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '870 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 16 applies each limitation of claim 1 of the '870 patent to the '870 Accused

Products.  Velocity provides this infringement analysis without the benefit of information about the '870 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '870 patent.  Exhibit 16 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 16 that is mapped to the '870 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

149.    D-Link also indirectly infringes the '870 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, D-Link advertises and encourages end users to utilize the '870 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

150.    D-Link has had knowledge of the '870 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, D-Link has had knowledge of the '870 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

151.    Alternatively, D-Link has had knowledge of the '870 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '870 patent and knew of its infringement, including by way of this lawsuit.

152.    D-Link intended to induce patent infringement by third-party customers and users of the '870 Accused Products and had knowledge that the inducing acts would cause infringement

or was willfully blind to the possibility that its inducing acts would cause infringement.  D-Link specifically intended and was aware that the normal and customary use of the accused products would infringe the '870 patent.  D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '870 patent and with the knowledge that the induced acts would constitute infringement.  For example, D-Link provides the '870 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '870 patent, including at least claim 1, and D-Link further advertises the '870 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '870 patent.  On information and belief, D-Link advertises all of the '870 Accused Products as complying with the 802.11ax Standard.[6]  By providing instruction and training to customers and end-users on how to use the '870 Accused Products in a manner that directly infringes one or more claims of the '870 patent, including at least claim 1, D-Link specifically intended to induce infringement of the '870 patent.  D-Link engaged in such inducement to promote the sales of the '870 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials, to actively induce the users of the accused products to infringe the '870 patent.  Accordingly, D-Link has induced and continues to induce users of the '870 Accused Products to use the '870 Accused Products in their ordinary and

---

[6] *See, e.g.*, *D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Router (M60)*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/wifi-6/products/aquila-pro-ai-ax6000-dual-band-wi-fi-6-router-m60 (last accessed May 27, 2025); *D-Link AX3000 5G NR Cellular WiFi 6 Router*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/routers-mesh-systems/products/d-link-ax3000-5g-cellular-gateway-wi-fi-6-router-enhanced-security-g530 (last accessed May 27, 2025); *D-Link WiFi Router AX1800 WiFi 6*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/products/d-link-wifi-6-router-ax1800?srsltid=AfmBOoouth QPo9JECYrEBW3bT-0Z2rUCzPZmmvpnA1PLe4YC_m2_p6pL (last accessed May 27, 2025)

customary way to infringe the '870 patent, knowing that such use constitutes infringement of the '870 patent.

153.    D-Link also indirectly infringes the '870 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '870 Accused Products and causing the '870 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '870 Accused Products, such that the '870 patent is directly infringed.  The accused components within the '870 Accused Products are material to the invention of the '870 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '870 patent.   D-Link has performed and continues to perform these affirmative acts with knowledge of the '870 patent and with intent, or willful blindness, that they cause the direct infringement of the '870 patent.

154.    As described above, D-Link knew that NXP possessed patents, including the '870 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. D-Link has also known that Velocity was the owner by assignment of the '870 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

155.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid

and not infringed.  At minimum, D-Link willfully blinded itself to its infringement of the patents-in-suit.  D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

156.    D-Link is utilizing the technology claimed in the '870 patent without paying a reasonable royalty.  D-Link is thus infringing the '870 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

157.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '870 patent.

158.    As a result of D-Link's infringement of the '870 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

**COUNT VI**
**INFRINGEMENT OF U.S. PATENT NO. 8,644,765**

159.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

160.    D-Link makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AX1800 Access Points; AX1800 Mesh Range Extenders; AX1800 Routers; AX1500 Wi-Fi 6 Routers; AX3000 5G NR Cellular Gateway WiFi 6 Routers; AX3000 Outdoor Access Points; AX5400 WiFi 6E Tri-Band Mesh Routers; Aquila Pro AI AX3000 Smart WiFi 6 Routers; Aquila Pro AI AX3000 Wi-Fi 6 Smart Mesh Extenders; Aquila Pro AI AX6000 Dual-Bandi Wi-Fi 6 Router; Aquila Pro AI Series Mesh Routers and Extenders

(including the E30; M30; and M60); DAP-E9560; DIR-X1860z Routers; DIR-X3000Z Mesh Wireless Gateways; DIR-X3060z Routers; DVA-6800Z Routers; EXO AX WiFi 6 AX1800 Mesh Extenders; Nuclias Cloud-Managed AX3600 Access Points; Nuclias Connect AX1800 Access Points; Nuclias Connect AX3000 Access Points; Nuclias Connect AX3600 Dual-Band PoE Access Points; Unified AX Dual-Band PoE Access Points; and 5G BE7200 Routers (collectively, the "'765 Accused Product(s)").

161.    D-Link designs, makes, uses, sells, and/or offers for sale the '765 Accused Products in the United States.

162.    One or more D-Link subsidiaries and/or affiliates use the '765 Accused Products in regular business operations.

163.    D-Link has directly infringed and continues to directly infringe the '765 patent by, among other things, making, using, offering for sale, and/or selling the '765 Accused Products. The functionality recited in the '765 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '765 Accused Products infringe at least claim 1 of the '765 patent can be found in the chart attached hereto as Exhibit 17.

164.    The '765 Accused Products are available to businesses and individuals throughout the United States.

165.    The '765 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

166.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '765 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '765 patent, including at least claim 1 pursuant to 35 U.S.C.

§ 271(a).  Exhibit 17 applies each limitation of claim 1 of the '765 patent to the '765 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '765 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '765 patent.  Exhibit 17 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 17 that is mapped to the '765 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

167.    D-Link also indirectly infringes the '765 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, D-Link advertises and encourages end users to utilize the '765 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

168.    D-Link has had knowledge of the '765 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, D-Link has had knowledge of the '765 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

169.    Alternatively, D-Link has had knowledge of the '765 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '765 patent and knew of its infringement, including by way of this lawsuit.

170.    D-Link intended to induce patent infringement by third-party customers and users of the '765 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  D-Link specifically intended and was aware that the normal and customary use of the '765 Accused Products would infringe the '765 patent.  D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '765 patent and with the knowledge that the induced acts would constitute infringement.  For example, D-Link provides the '765 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '765 patent, including at least claim 1, and D-Link further advertises the '765 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '765 patent.  On information and belief, D-Link advertises all of the '765 Accused Products as complying with the 802.11ax Standard.[7]  By providing instruction and training to customers and end-users on how to use the '765 Accused Products in a manner that directly infringes one or more claims of the '765 patent, including at least claim 1, D-Link specifically intended to induce infringement of the '765 patent.  D-Link engaged in such inducement to promote the sales of the '765 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '765 Accused Products to infringe the '765 patent.  Accordingly, D-Link has induced and

---

[7] *See, e.g.*, *D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Router (M60)*, D-LINK SHOP WEBSITE,  *available  at*:  https://shop.us.dlink.com/collections/wifi-6/products/aquila-pro-ai-ax6000-dual-band-wi-fi-6-router-m60 (last accessed May 27, 2025); *D-Link AX3000 5G NR Cellular  WiFi  6  Router*,  D-LINK  SHOP  WEBSITE,  *available  at*: https://shop.us.dlink.com/collections/routers-mesh-systems/products/d-link-ax3000-5g-cellular-gateway-wi-fi-6-router-enhanced-security-g530 (last accessed May 27, 2025); *D-Link WiFi Router  AX1800  WiFi  6*,  D-LINK  SHOP  WEBSITE,  *available  at*: https://shop.us.dlink.com/products/d-link-wifi-6-router-ax1800?srsltid=AfmBOoouth QPo9JECYrEBW3bT-0Z2rUCzPZmmvpnA1PLe4YC_m2_p6pL (last accessed May 27, 2025)

continues to induce users of the '765 Accused Products to use the '765 Accused Products in their ordinary and customary way to infringe the '765 patent, knowing that such use constitutes infringement of the '765 patent.

171.    D-Link also indirectly infringes the '765 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '765 Accused Products and causing the '765 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '765 Accused Products, such that the '765 patent is directly infringed.  The accused components within the '765 Accused Products are material to the invention of the '765 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '765 patent.  D-Link has performed and continues to perform these affirmative acts with knowledge of the '765 patent and with intent, or willful blindness, that they cause the direct infringement of the '765 patent.

172.    As described above, D-Link knew that NXP possessed patents, including the '765 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. D-Link has also known that Velocity was the owner by assignment of the '765 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

173.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6

products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, D-Link willfully blinded itself to its infringement of the patents-in-suit.  D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

174.    D-Link is utilizing the technology claimed in the '765 patent without paying a reasonable royalty.  D-Link is thus infringing the '765 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

175.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '765 patent.

176.    As a result of D-Link's infringement of the '765 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

### COUNT VII
### INFRINGEMENT OF U.S. PATENT NO. 9,083,401

177.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

178.    D-Link makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AX1800 Access Points; AX1800 Mesh Range Extenders; AX1800 Routers; AX1500 Wi-Fi 6 Routers; AX3000 5G NR Cellular Gateway WiFi 6 Routers; AX3000 Outdoor Access Points; AX5400 WiFi 6E Tri-Band Mesh Routers; Aquila Pro AI AX3000 Smart WiFi 6 Routers; Aquila Pro AI AX3000 Wi-Fi 6 Smart Mesh Extenders; Aquila

Pro AI AX6000 Dual-Bandi Wi-Fi 6 Router; Aquila Pro AI Series Mesh Routers and Extenders (including the E30; M30; and M60); DAP-E9560; DIR-X1860z Routers; DIR-X3000Z Mesh Wireless Gateways; DIR-X3060z Routers; DVA-6800Z Routers; EXO AX WiFi 6 AX1800 Mesh Extenders; Nuclias Cloud-Managed AX3600 Access Points; Nuclias Connect AX1800 Access Points; Nuclias Connect AX3000 Access Points; Nuclias Connect AX3600 Dual-Band PoE Access Points; Unified AX Dual-Band PoE Access Points; and 5G BE7200 Routers (collectively, the "'401 Accused Product(s)").

179.    D-Link designs, makes, uses, sells, and/or offers for sale the '401 Accused Products in the United States.

180.    One or more D-Link subsidiaries and/or affiliates use the '401 Accused Products in regular business operations.

181.    D-Link has directly infringed and continues to directly infringe the '401 patent by, among other things, making, using, offering for sale, and/or selling the '401 Accused Products. The functionality recited in the '401 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '401 Accused Products infringe at least claim 1 of the '401 patent can be found in the chart attached hereto as Exhibit 18.

182.    The '401 Accused Products are available to businesses and individuals throughout the United States.

183.    The '401 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

184.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '401 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and

equivalently) one or more claims of the '401 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 18 applies each limitation of claim 1 of the '401 patent to the '401 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '401 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '401 patent.  Exhibit 18 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 18 that is mapped to the '401 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

185.    D-Link also indirectly infringes the '401 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, D-Link advertises and encourages end users to utilize the '401 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

186.    D-Link has had knowledge of the '401 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, D-Link has had knowledge of the '401 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

187.    Alternatively, D-Link has had knowledge of the '401 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '401 patent and knew of its infringement, including by way of this lawsuit.

188. D-Link intended to induce patent infringement by third-party customers and users of the '401 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement. D-Link specifically intended and was aware that the normal and customary use of the '401 Accused Products would infringe the '401 patent. D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '401 patent and with the knowledge that the induced acts would constitute infringement. For example, D-Link provides the '401 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '401 patent, including at least claim 1, and D-Link further advertises the '401 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '401 patent. On information and belief, D-Link advertises all of the '401 Accused Products as complying with the 802.11ax Standard.[8] By providing instruction and training to customers and end-users on how to use the '401 Accused Products in a manner that directly infringes one or more claims of the '401 patent, including at least claim 1, D-Link specifically intended to induce infringement of the '401 patent. D-Link engaged in such inducement to promote the sales of the '401 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '401 Accused Products to infringe the '401 patent. Accordingly, D-Link has induced and

---

[8] *See, e.g.*, *D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Router (M60)*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/wifi-6/products/aquila-pro-ai-ax6000-dual-band-wi-fi-6-router-m60 (last accessed May 27, 2025); *D-Link AX3000 5G NR Cellular WiFi 6 Router*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/routers-mesh-systems/products/d-link-ax3000-5g-cellular-gateway-wi-fi-6-router-enhanced-security-g530 (last accessed May 27, 2025); *D-Link WiFi Router AX1800 WiFi 6*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/products/d-link-wifi-6-router-ax1800?srsltid=AfmBOoouth QPo9JECYrEBW3bT-0Z2rUCzPZmmvpnA1PLe4YC_m2_p6pL (last accessed May 27, 2025)

continues to induce users of the '401 Accused Products to use the '401 Accused Products in their ordinary and customary way to infringe the '401 patent, knowing that such use constitutes infringement of the '401 patent.

189.    D-Link also indirectly infringes the '401 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '401 Accused Products and causing the '401 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '401 Accused Products, such that the '401 patent is directly infringed.  The accused components within the '401 Accused Products are material to the invention of the '401 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '401 patent.   D-Link has performed and continues to perform these affirmative acts with knowledge of the '401 patent and with intent, or willful blindness, that they cause the direct infringement of the '401 patent.

190.    As described above, D-Link knew that NXP possessed patents, including the '401 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. D-Link has also known that Velocity was the owner by assignment of the '401 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

191.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6

products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, D-Link willfully blinded itself to its infringement of the patents-in-suit.  D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

192.    D-Link is utilizing the technology claimed in the '401 patent without paying a reasonable royalty.  D-Link is thus infringing the '401 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

193.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '401 patent.

194.    As a result of D-Link's infringement of the '401 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

## COUNT VIII
### INFRINGEMENT OF U.S. PATENT NO. 10,200,096

195.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

196.    D-Link makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AX1800 Access Points; AX1800 Mesh Range Extenders; AX1800 Routers; AX1500 Wi-Fi 6 Routers; AX3000 5G NR Cellular Gateway WiFi 6 Routers; AX3000 Outdoor Access Points; AX5400 WiFi 6E Tri-Band Mesh Routers; Aquila Pro AI AX3000 Smart WiFi 6 Routers; Aquila Pro AI AX3000 Wi-Fi 6 Smart Mesh Extenders; Aquila

Pro AI AX6000 Dual-Bandi Wi-Fi 6 Router; Aquila Pro AI Series Mesh Routers and Extenders (including the E30; M30; and M60); DAP-E9560; DIR-X1860z Routers; DIR-X3000Z Mesh Wireless Gateways; DIR-X3060z Routers; DVA-6800Z Routers; EXO AX WiFi 6 AX1800 Mesh Extenders; Nuclias Cloud-Managed AX3600 Access Points; Nuclias Connect AX1800 Access Points; Nuclias Connect AX3000 Access Points; Nuclias Connect AX3600 Dual-Band PoE Access Points; Unified AX Dual-Band PoE Access Points; and 5G BE7200 Routers (collectively, the "'096 Accused Product(s)").

197.    D-Link designs, makes, uses, sells, and/or offers for sale the '096 Accused Products in the United States.

198.    One or more D-Link subsidiaries and/or affiliates use the '096 Accused Products in regular business operations.

199.    D-Link has directly infringed and continues to directly infringe the '096 patent by, among other things, making, using, offering for sale, and/or selling the '096 Accused Products. The functionality recited in the '096 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '096 Accused Products infringe at least claim 1 of the '096 patent can be found in the chart attached hereto as Exhibit 19.

200.    The '096 Accused Products are available to businesses and individuals throughout the United States.

201.    The '096 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

202.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '096 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and

equivalently) one or more claims of the '096 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a). Exhibit 19 applies each limitation of claim 1 of the '096 patent to the '096 Accused Products. Velocity provides this infringement analysis without the benefit of information about the '096 Accused Products obtained through discovery. This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '096 patent. Exhibit 19 is hereby incorporated by reference in its entirety. Each claim element in Exhibit 19 that is mapped to the '096 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

203.    D-Link also indirectly infringes the '096 patent by actively inducing infringement under 35 U.S.C. § 271(b). As an example, D-Link advertises and encourages end users to utilize the '096 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

204.    D-Link has had knowledge of the '096 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Alternatively, D-Link has had knowledge of the '096 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

205.    Alternatively, D-Link has had knowledge of the '096 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '096 patent and knew of its infringement, including by way of this lawsuit.

206.    D-Link intended to induce patent infringement by third-party customers and users of the '096 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  D-Link specifically intended and was aware that the normal and customary use of the '096 Accused Products would infringe the '096 patent.  D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '096 patent and with the knowledge that the induced acts would constitute infringement.  For example, D-Link provides the '096 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '096 patent, including at least claim 1, and D-Link further advertises the '096 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '096 patent.  On information and belief, D-Link advertises all of the '096 Accused Products as complying with the 802.11ax Standard.[9]  By providing instruction and training to customers and end-users on how to use the '096 Accused Products in a manner that directly infringes one or more claims of the '096 patent, including at least claim 1, D-Link specifically intended to induce infringement of the '096 patent.  D-Link engaged in such inducement to promote the sales of the '096 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '096 Accused Products to infringe the '096 patent.  Accordingly, D-Link has induced and

---

[9] *See, e.g.*, *D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Router (M60)*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/wifi-6/products/aquila-pro-ai-ax6000-dual-band-wi-fi-6-router-m60 (last accessed May 27, 2025); *D-Link AX3000 5G NR Cellular WiFi 6 Router*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/routers-mesh-systems/products/d-link-ax3000-5g-cellular-gateway-wi-fi-6-router-enhanced-security-g530 (last accessed May 27, 2025); *D-Link WiFi Router AX1800 WiFi 6*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/products/d-link-wifi-6-router-ax1800?srsltid=AfmBOoouth QPo9JECYrEBW3bT-0Z2rUCzPZmmvpnA1PLe4YC_m2_p6pL (last accessed May 27, 2025)

continues to induce users of the '096 Accused Products to use the '096 Accused Products in their ordinary and customary way to infringe the '096 patent, knowing that such use constitutes infringement of the '096 patent.

207.    D-Link also indirectly infringes the '096 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '096 Accused Products and causing the '096 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '096 Accused Products, such that the '096 patent is directly infringed.  The accused components within the '096 Accused Products are material to the invention of the '096 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '096 patent.   D-Link has performed and continues to perform these affirmative acts with knowledge of the '096 patent and with intent, or willful blindness, that they cause the direct infringement of the '096 patent.

208.    As described above, D-Link knew that NXP possessed patents, including the '096 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. D-Link has also known that Velocity was the owner by assignment of the '096 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

209.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6

products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed. At minimum, D-Link willfully blinded itself to its infringement of the patents-in-suit. D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

210. D-Link is utilizing the technology claimed in the '096 patent without paying a reasonable royalty. D-Link is thus infringing the '096 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

211. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '096 patent.

212. As a result of D-Link's infringement of the '096 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

## COUNT IX
### INFRINGEMENT OF U.S. PATENT NO. 8,238,859

213. Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

214. D-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard") and are certified as such by the Wi-Fi Alliance, including but not limited to the following products: AX1800 Access Points; AX1800 Mesh Range Extenders; AX1800 Routers; AX1500 Wi-Fi 6 Routers; AX3000 5G NR Cellular Gateway WiFi 6 Routers; AX3000 Outdoor Access Points; AX5400 WiFi 6E Tri-Band Mesh Routers; Aquila Pro AI AX3000 Smart WiFi 6 Routers; Aquila Pro AI AX3000 Wi-Fi 6 Smart

Mesh Extenders; Aquila Pro AI AX6000 Dual-Bandi Wi-Fi 6 Router; Aquila Pro AI Series Mesh Routers and Extenders (including the E30; M30; and M60); DAP-E9560; DIR-X1860z Routers; DIR-X3000Z Mesh Wireless Gateways; DIR-X3060z Routers; DVA-6800Z Routers; EXO AX WiFi 6 AX1800 Mesh Extenders; Nuclias Cloud-Managed AX3600 Access Points; Nuclias Connect AX1800 Access Points; Nuclias Connect AX3000 Access Points; Nuclias Connect AX3600 Dual-Band PoE Access Points; Unified AX Dual-Band PoE Access Points; and 5G BE7200 Routers (collectively, the "'859 Accused Product(s)").

215.    D-Link designs, makes, uses, sells, and/or offers for sale the '859 Accused Products in the United States.

216.    One or more D-Link subsidiaries and/or affiliates use the '859 Accused Products in regular business operations.

217.    D-Link has directly infringed and continues to directly infringe the '859 patent by, among other things, making, using, offering for sale, and/or selling the '859 Accused Products. The functionality recited in the '859 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '859 Accused Products infringe at least claim 1 of the '859 patent can be found in the chart attached hereto as Exhibit 20.

218.    The '859 Accused Products are available to businesses and individuals throughout the United States.

219.    The '859 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

220.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '859 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and

equivalently) one or more claims of the '859 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a). Exhibit 20 applies each limitation of claim 1 of the '859 patent to the '859 Accused Products. Velocity provides this infringement analysis without the benefit of information about the '859 Accused Products obtained through discovery. This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '859 patent. Exhibit 20 is hereby incorporated by reference in its entirety. Each claim element in Exhibit 20 that is mapped to the '859 Accused Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

221.     D-Link also indirectly infringes the '859 patent by actively inducing infringement under 35 U.S.C. § 271(b). As an example, D-Link advertises and encourages end users to utilize the '859 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

222.     D-Link has had knowledge of the '859 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. Alternatively, D-Link has had knowledge of the '859 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

223.     Alternatively, D-Link has had knowledge of the '859 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '859 patent and knew of its infringement, including by way of this lawsuit.

224.    D-Link intended to induce patent infringement by third-party customers and users of the '859 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  D-Link specifically intended and was aware that the normal and customary use of the '859 Accused Products would infringe the '859 patent.  D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '859 patent and with the knowledge that the induced acts would constitute infringement.  For example, D-Link provides the '859 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '859 patent, including at least claim 1, and D-Link further advertises the '859 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '859 patent.  On information and belief, D-Link advertises all of the '859 Accused Products as complying with the 802.11ax Standard.[10]  By providing instruction and training to customers and end-users on how to use the '859 Accused Products in a manner that directly infringes one or more claims of the '859 patent, including at least claim 1, D-Link specifically intended to induce infringement of the '859 patent.  D-Link engaged in such inducement to promote the sales of the '859 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '859 Accused Products to infringe the '859 patent.  Accordingly, D-Link has induced and

---

[10] *See, e.g.*, *D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Router (M60)*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/wifi-6/products/aquila-pro-ai-ax6000-dual-band-wi-fi-6-router-m60 (last accessed May 27, 2025); *D-Link AX3000 5G NR Cellular WiFi 6 Router*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/routers-mesh-systems/products/d-link-ax3000-5g-cellular-gateway-wi-fi-6-router-enhanced-security-g530 (last accessed May 27, 2025); *D-Link WiFi Router AX1800 WiFi 6*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/products/d-link-wifi-6-router-ax1800?srsltid=AfmBOoouth QPo9JECYrEBW3bT-0Z2rUCzPZmmvpnA1PLe4YC_m2_p6pL (last accessed May 27, 2025)

continues to induce users of the '859 Accused Products to use the '859 Accused Products in their ordinary and customary way to infringe the '859 patent, knowing that such use constitutes infringement of the '859 patent.

225.    D-Link also indirectly infringes the '859 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '859 Accused Products and causing the '859 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '859 Accused Products, such that the '859 patent is directly infringed.  The accused components within the '859 Accused Products are material to the invention of the '859 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '859 patent.   D-Link has performed and continues to perform these affirmative acts with knowledge of the '859 patent and with intent, or willful blindness, that they cause the direct infringement of the '859 patent.

226.    As described above, D-Link knew that NXP possessed patents, including the '859 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. D-Link has also known that Velocity was the owner by assignment of the '859 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

227.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6

products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, D-Link willfully blinded itself to its infringement of the patents-in-suit.  D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

228.    D-Link is utilizing the technology claimed in the '859 patent without paying a reasonable royalty.  D-Link is thus infringing the '859 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

229.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '859 patent.

230.    As a result of D-Link's infringement of the '859 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

## COUNT X
## INFRINGEMENT OF U.S. PATENT NO. 8,265,573

231.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

232.    D-Link makes, sells, offers to sell, imports, and/or uses all devices that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard") with the 6E extension, including but not limited to the following products: Aquila Pro AI Series Mesh Routers (including the E30; M30; and M60) and Extenders; AX5400 WiFi 6E Tri-Band Mesh Routers; DAP-E9560; and 5G BE7200 Routers (collectively, the "'573 Accused Product(s)").

233.    D-Link designs, makes, uses, sells, and/or offers for sale the '573 Accused Products in the United States.

234.    One or more D-Link subsidiaries and/or affiliates use the '573 Accused Products in regular business operations.

235.    D-Link has directly infringed and continues to directly infringe the '573 patent by, among other things, making, using, offering for sale, and/or selling the '573 Accused Products. The functionality recited in the '573 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '573 Accused Products infringe at least claim 12 of the '573 patent can be found in the chart attached hereto as Exhibit 21.

236.    The '573 Accused Products are available to businesses and individuals throughout the United States.

237.    The '573 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

238.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '573 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '573 patent, including at least claim 12 pursuant to 35 U.S.C. § 271(a).   Exhibit 21 applies each limitation of claim 12 of the '573 patent to the '573 Accused Products.   Velocity provides this infringement analysis without the benefit of information about the '573 Accused Products obtained through discovery.   This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '573 patent.   Exhibit 21 is hereby incorporated by reference in its entirety.   Each claim element in Exhibit 21 that is mapped to the '573 Accused Products shall be

considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

239.    D-Link also indirectly infringes the '573 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, D-Link advertises and encourages end users to utilize the '573 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

240.    D-Link has had knowledge of the '573 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, D-Link has had knowledge of the '573 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

241.    Alternatively, D-Link has had knowledge of the '573 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '573 patent and knew of its infringement, including by way of this lawsuit.

242.    D-Link intended to induce patent infringement by third-party customers and users of the '573 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  D-Link specifically intended and was aware that the normal and customary use of the accused products would infringe the '573 patent.  D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '573 patent and with the knowledge that the induced acts would constitute infringement.  For example, D-Link provides the '573

Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '573 patent, including at least claim 12, and D-Link further advertises the '573 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '573 patent.  On information and belief, D-Link advertises all of the '573 Accused Products as complying with the 802.11ax Standard.[11]  By providing instruction and training to customers and end-users on how to use the '573 Accused Products in a manner that directly infringes one or more claims of the '573 patent, including at least claim 12, D-Link specifically intended to induce infringement of the '573 patent.  D-Link engaged in such inducement to promote the sales of the '573 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '573 Accused Products to infringe the '573 patent.  Accordingly, D-Link has induced and continues to induce users of the '573 Accused Products to use the '573 Accused Products in their ordinary and customary way to infringe the '573 patent, knowing that such use constitutes infringement of the '573 patent.

243.    D-Link also indirectly infringes the '573 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '573 Accused Products and causing the '573 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '573 Accused Products, such that the '573 patent is directly

---

[11] *See, e.g.*, *D-Link's New AQUILA PRO AI Series Wi-Fi 6/6E Mesh System to Add Matter Compliance*, D-LINK PRESS RELEASE (May 1, 2023), *available at*: https://www.dlink.com/en/press-centre/press-releases/2023/may/01/aquila-pro-ai; *AX5400 Wi-Fi6E Tri-band Mesh Router*, D-LINK WEBSITE, *available at*: https://dlinkmea.com/upload/downloadable/DIR_XE5480__1__66c4346a21b53.pdf.

infringed.  The accused components within the '573 Accused Products are material to the invention of the '573 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '573 patent.  D-Link has performed and continues to perform these affirmative acts with knowledge of the '573 patent and with intent, or willful blindness, that they cause the direct infringement of the '573 patent.

244.    As described above, D-Link knew that NXP possessed patents, including the '573 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. D-Link has also known that Velocity was the owner by assignment of the '573 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

245.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, D-Link willfully blinded itself to its infringement of the patents-in-suit.  D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

246.    D-Link is utilizing the technology claimed in the '573 patent without paying a reasonable royalty.  D-Link is thus infringing the '573 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

247.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '573 patent.

248.    As a result of D-Link's infringement of the '573 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

### COUNT XI
### INFRINGEMENT OF U.S. PATENT NO. 9,596,648

249.    Plaintiff references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

250.    D-Link makes, sells, offers to sell, imports, and/or uses all Access Points ("AP") that practice the IEEE 802.11ax (Wi-Fi 6) standard ("802.11ax Standard"), including but not limited to the following products: AX1800 Access Points; AX1800 Mesh Range Extenders; AX1800 Routers; AX1500 Wi-Fi 6 Routers; AX3000 5G NR Cellular Gateway WiFi 6 Routers; AX3000 Outdoor Access Points; AX5400 WiFi 6E Tri-Band Mesh Routers; Aquila Pro AI AX3000 Smart WiFi 6 Routers; Aquila Pro AI AX3000 Wi-Fi 6 Smart Mesh Extenders; Aquila Pro AI AX6000 Dual-Bandi Wi-Fi 6 Router; Aquila Pro AI Series Mesh Routers and Extenders (including the E30; M30; and M60); DAP-E9560; DIR-X1860z Routers; DIR-X3000Z Mesh Wireless Gateways; DIR-X3060z Routers; DVA-6800Z Routers; EXO AX WiFi 6 AX1800 Mesh Extenders; Nuclias Cloud-Managed AX3600 Access Points; Nuclias Connect AX1800 Access Points; Nuclias Connect AX3000 Access Points; Nuclias Connect AX3600 Dual-Band PoE Access Points; Unified AX Dual-Band PoE Access Points; and 5G BE7200 Routers (collectively, the "'648 Accused Product(s)").

251.    D-Link designs, makes, uses, sells, and/or offers for sale the '648 Accused Products in the United States.

252.    One or more D-Link subsidiaries and/or affiliates use the '648 Accused Products in regular business operations.

253.    D-Link has directly infringed and continues to directly infringe the '648 patent by, among other things, making, using, offering for sale, and/or selling the '648 Accused Products. The functionality recited in the '648 patent has been incorporated into the 802.11ax Standard.   A detailed description as to why the '648 Accused Products infringe at least claim 1 of the '648 patent can be found in the chart attached hereto as Exhibit 22.

254.    The '648 Accused Products are available to businesses and individuals throughout the United States.

255.    The '648 Accused Products are provided to businesses and individuals located in the Eastern District of Texas.

256.    By making, using, testing, offering for sale, and/or selling wireless networking devices compliant with the 802.11ax Standard, including but not limited to the '648 Accused Products, D-Link has injured Plaintiff and is liable to Plaintiff for directly infringing (literally and equivalently) one or more claims of the '648 patent, including at least claim 1 pursuant to 35 U.S.C. § 271(a).  Exhibit 22 applies each limitation of claim 1 of the '648 patent to the '648 Accused Products.  Velocity provides this infringement analysis without the benefit of information about the '648 Accused Products obtained through discovery.  This chart is not intended to limit Velocity's right to modify the chart or allege that other activities of D-Link infringe the identified claim or any other claims of the '648 patent.  Exhibit 22 is hereby incorporated by reference in its entirety.  Each claim element in Exhibit 22 that is mapped to the '648 Accused Products shall be

considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

257.    D-Link also indirectly infringes the '648 patent by actively inducing infringement under 35 U.S.C. § 271(b).  As an example, D-Link advertises and encourages end users to utilize the '648 Accused Products to send and receive modulated digital data via radio waves in compliance with the 802.11ax Standard (*i.e.*, utilize the 802.11ax Standard for wireless networking).

258.    D-Link has had knowledge of the '648 patent since at least shortly after September 29, 2020, when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard.  Alternatively, D-Link has had knowledge of the '648 patent since at least April 15, 2025, when Velocity sent D-Link a letter explaining Velocity owned patents covering technologies incorporated into the 802.11ax Standard and inviting D-Link to take a license to Velocity's patent portfolio, including the patents-in-suit.

259.    Alternatively, D-Link has had knowledge of the '648 patent since at least service of this Complaint or shortly thereafter, and D-Link knew of the '648 patent and knew of its infringement, including by way of this lawsuit.

260.    D-Link intended to induce patent infringement by third-party customers and users of the '648 Accused Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  D-Link specifically intended and was aware that the normal and customary use of the '648 Accused Products would infringe the '648 patent.  D-Link performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '648 patent and with the knowledge that the induced acts would constitute infringement.  For example, D-Link provides

the '648 Accused Products that have the capability of operating in a manner that infringe one or more of the claims of the '648 patent, including at least claim 1, and D-Link further advertises the '648 Accused Products so that consumers will purchase and use the products, thus inducing those customers to infringe the '648 patent.  On information and belief, D-Link advertises all of the '648 Accused Products as complying with the 802.11ax Standard.[12]  By providing instruction and training to customers and end-users on how to use the '648 Accused Products in a manner that directly infringes one or more claims of the '648 patent, including at least claim 1, D-Link specifically intended to induce infringement of the '648 patent.  D-Link engaged in such inducement to promote the sales of the '648 Accused Products, e.g., through D-Link user manuals, product support, marketing materials, and training materials to actively induce the users of the '648 Accused Products to infringe the '648 patent.  Accordingly, D-Link has induced and continues to induce users of the '648 Accused Products to use the '648 Accused Products in their ordinary and customary way to infringe the '648 patent, knowing that such use constitutes infringement of the '648 patent.

261.    D-Link also indirectly infringes the '648 patent under 35 U.S.C. § 271(c) by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States.  D-Link's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the '648 Accused Products and causing the

---

[12] *See, e.g.*, *D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Router (M60)*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/wifi-6/products/aquila-pro-ai-ax6000-dual-band-wi-fi-6-router-m60 (last accessed May 27, 2025); *D-Link AX3000 5G NR Cellular WiFi 6 Router*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/collections/routers-mesh-systems/products/d-link-ax3000-5g-cellular-gateway-wi-fi-6-router-enhanced-security-g530 (last accessed May 27, 2025); *D-Link WiFi Router AX1800 WiFi 6*, D-LINK SHOP WEBSITE, *available at*: https://shop.us.dlink.com/products/d-link-wifi-6-router-ax1800?srsltid=AfmBOoouth QPo9JECYrEBW3bT-0Z2rUCzPZmmvpnA1PLe4YC_m2_p6pL (last accessed May 27, 2025)

'648 Accused Products to be manufactured, used, sold, and offered for sale contribute to customers' and end-users' use of the '648 Accused Products, such that the '648 patent is directly infringed.  The accused components within the '648 Accused Products are material to the invention of the '648 patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by D-Link to be especially adapted for use in infringement of the '648 patent.   D-Link has performed and continues to perform these affirmative acts with knowledge of the '648 patent and with intent, or willful blindness, that they cause the direct infringement of the '648 patent.

262.    As described above, D-Link knew that NXP possessed patents, including the '648 patent, at least since September 29, 2020 when NXP submitted a Letter of Assurance to IEEE indicating it owned patents that may be essential to the implementation of the 802.11ax Standard. D-Link has also known that Velocity was the owner by assignment of the '648 patent since at least April 15, 2025, when Velocity sent a letter to D-Link explaining it owned patents essential to the implementation of the 802.11ax Standard.

263.    D-Link did not take a license to the patents-in-suit, but instead proceeded to infringe the patents-in-suit with full and complete knowledge of their applicability to D-Link's Wi-Fi 6 products without taking a license and without a good faith belief that the patents-in-suit are invalid and not infringed.  At minimum, D-Link willfully blinded itself to its infringement of the patents-in-suit.  D-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement.

264.    The '648 patent is well known within the industry as demonstrated by multiple citations to the '648 patent in published patents and patent applications assigned to technology companies and academic institutions.  D-Link is utilizing the technology claimed in the '648 patent

without paying a reasonable royalty.  D-Link is infringing the '648 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

265.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '648 patent.

266.    As a result of D-Link's infringement of the '648 patent, Plaintiff has suffered monetary damages, and seeks recovery in an amount adequate to compensate for D-Link's infringement, but in no event less than a reasonable royalty for the use made of the invention by D-Link together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Velocity respectfully requests that this Court enter:

A.    A judgment in favor of Plaintiff that D-Link has infringed, either literally and/or under the doctrine of equivalents, the '570, '213, '832, '343, '870, '765, '401, '096, '859, '573, and '648 patents;

B.    An award of damages resulting from D-Link's acts of infringement in accordance with 35 U.S.C. § 284;

C.    A judgment and order finding that D-Link's infringement was willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate within the meaning of 35 U.S.C. § 284 and awarding enhanced damages to Plaintiff.

D.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding reasonable attorneys' fees to Plaintiff against D-Link.

E.      Any and all other relief to which Plaintiff may show itself to be entitled.

### JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Velocity requests a trial by jury of any issues so triable by right.

Dated:  July 9, 2025

Respectfully submitted,

*/s/  Daniel P. Hipskind*
Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
Erin E. McCracken (CA SB No. 244523)
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com
E-mail: eem@bergerhipskind.com

Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
E-mail: ederieux@capshawlaw.com

*Attorneys for Velocity Communication Technologies, LLC*